IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


**INGA F. DANVILLE,**

       **Plaintiff,**

**v.**                                           **CIV No. 00-086 LH/KBM**

**REGIONAL LAB CORPORATION,**
a New Mexico corporation d/b/a
**TRICORE REFERENCE LABORATORIES,**

       **Defendant.**


**MEMORANDUM OPINION AND ORDER**

      **THIS MATTER** comes before the Court on Defendant's Motion for Summary Judgment (Docket No. 16). The Court, having considered the briefs of the parties and the relevant case law, for the reasons that follow, concludes that Defendant's motion is well-taken and shall be **granted**, resulting in the dismissal of this case.

**Background**

      Plaintiff Danville filed her Complaint for Employment Discrimination in Violation of the Age Discrimination in Employment Act of 1967 ("ADEA") on January 21, 2000. The ADEA prohibits an employer from "discharg[ing] any individual or otherwise discriminat[ing] against any

1

individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age . . . . " 29 U.S.C. § 623(a)(1). Plaintiff alleges that Defendant TriCore ("TriCore") denied her the blood bank manager position, due to her age and despite the fact that she was fully qualified and had successfully held a similar position previously. At the time that Ms. Danville applied for this position, she was 64 years of age. Ms. Danville asks this Court to compel Tricore to award the sought-after position to her, as well as lost wages, liquidated damages, punitive damages, damages for emotional distress, and costs and attorney fees.

## Analysis

Plaintiff's first step in proving discrimination under the ADEA is to supply evidence proving a prima facie case of age discrimination by a preponderance of the evidence *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993). To prove a prima facie case of age discrimination, Plaintiff must show that: (1) she was a member of a protected class (age 40-70); (2) she was adversely affected by the Defendant's employment decision; (3) she was qualified for the position; and (4) a younger person was given the desired position. *Jones v. Unisys Corp.*, 54 F.3d 624, 630 (10th Cir. 1995).

Once Plaintiff establishes her prima facie case, a presumption arises that her employer unlawfully discriminated against her, and the burden shifts to Defendant to produce admissible evidence of a legitimate, nondiscriminatory explanation for its employment action. *St. Mary's Honor Center*, 509 U.S. at 506-08. If the defendant offers evidence of such an explanation, "the presumption of discrimination established by the prima facie showing 'simply drops out of the

picture.' " *Ingels v. Thiokol Corp.*, 42 F.3d 616, 621 (10th Cir. 1994)(*quoting St. Mary's Honor Center,* 509 U.S. at 510). The plaintiff must then offer evidence that age was a determinative factor in the employment decision by either showing that the defendant's proffered reasons were really a pretext for age discrimination or by producing direct evidence of age discrimination. *Ingels*, 42 F.3d at 621. If a plaintiff advances evidence establishing a prima facie case and evidence upon which a factfinder could conclude that the defendant's alleged nondiscriminatory reasons for the employment decisions are pretextual, the case should go to the factfinder. *Durham v. Xerox Corp.*, 18 F.3d 836, 839-40 (10th Cir. 1994), *cert. denied.*

Ms. Danville easily makes out a prima facie case of age discrimination. First, at age 64, she was within the protected class. Second, she was denied the position of blood bank manager, an adverse employment decision, and she was arguably qualified for the position. Finally, Cheryl Richards was 47 at the time she was hired for the position. Although she was not outside the protected class, she was obviously younger than Ms. Danville.

The burden next shifts to TriCore to articulate a legitimate, nondiscriminatory reason for failing to hire Ms. Danville for this position. As did Plaintiff, TriCore is able to meet its burden easily. TriCore articulated two basic reasons why it did not hire Ms. Danville. The first of these involved Plaintiff's management skills. At the April 29, 1999, search committee meeting, the committee discussed staff complaints about Plaintiff. These complaints related to Plaintiff's management style and to disciplinary actions she had taken. The search committee understood that some staff members had an aversion to having Plaintiff as their supervisor. At the meeting, Ms. Woolley expressed her opinion that Plaintiff was not a strong team builder and that she lacked some of the management skills necessary for the job. (Exhibit E, Woolley Depo. at p. 42).

3

Ms. Ash stated that her sense from the meeting, that included several of Plaintiff's co-workers, was that most of the people who were acquainted with Ms. Danville felt that she did not have the management style that TriCore was trying to develop within the organization. (Exhibit D, Ash Depo. at p. 16).

The second area of concern articulated by TriCore was that Plaintiff was not as experienced as other applicants in managing a centralized and/or multi-site blood bank operation. According to Ms. Ash, at the April 29 meeting, the committee discussed that Plaintiff did not have as much experience as some other candidates in a multi-site blood bank setting. (*Id.* at p. 12). Ms. Tulenko testified that the four applications who were interviewed received interviews because they had current experience in a centralized blood banking situation or recent experience of that nature, which Plaintiff did not. (Exhibit F, Tulenko Depo. at p. 14). She stated that she wanted centralized blood bank experience or large multi-site facility experience, which could not be obtained at Presbyterian Hospital. (*Id* at 38).[1] Ms. Richards, who was ultimately hired as the blood bank manager, had recent experience in multi-site blood banks with two hospital systems in California. (*Id.* at pp. 17, 19-20, 42-43).

These reasons are sufficient to pass the burden of proof back to Plaintiff. At this juncture, Plaintiff bears the ultimate burden of showing that TriCore discriminated against her on the illegal basis of age, either by producing direct evidence of age discrimination or by showing that there is a genuine issue of material fact as to whether TriCore's proffered reasons were really a pretext for

---

[1] Initially some members of the committee were concerned because Ms. Danville had held a large number of positions in the past (17 positions in 10 states), indicating job instability. Upon further investigation and the receipt of further information, this reason was discarded in the committee's decision, as to both Plaintiff and Ms. Richards. Ultimately, it was not a reason against hiring Plaintiff, although it gives possible context to the "might not be around very long" comment that is discussed later in this Memorandum Opinion.

4

age discrimination.

"A plaintiff demonstrates pretext by showing either 'that a discriminatory reason more likely motivated the employer or . . . that the employer's proffered explanation is unworthy of credence.' " *Rea v. Martin Marietta Corp.,* 29 F.3d 1450, 1455 (*quoting Texas Dep't of Community Affairs v. Burdine*, 450 U.S 248, 256 (1981). Pretext can be shown by " 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted nondiscriminatory reasons.'" *Morgan v. Hilti, Inc*., 108 F.3d 1319, 1323 (10th Cir. 1997) (*citations omitted*). As in this case, where Plaintiff seeks to demonstrate that the employer's explanation is merely a pretext, this Court "requires a showing that the tendered reason for the employment decision was not the genuine motivating reason, but rather was a disingenuous or sham reason." *Reynolds v. School District No. 1 Denver, Colorado,* 69 F.3d 1523, 1535 (10th Cir. 1995). "The relevant inquiry is not whether [TriCore's] proffered reasons were wise, fair or correct, but whether [TriCore] honestly believed those reasons and acted in good faith upon those beliefs." *Bullington v. United Airlines*, 186 F.3d 1301, 1318 (10th Cir. 1999).

Plaintiff need not disprove TriCore's reasons or demonstrate that age was the only factor motivating the decision, but she must show that age actually played a role in the employer's decision making process and had a determinative influence on the decision. *Hazen Paper Co. v. Biggens*, 507 U.S. 604, 609 (1993). The burden of proof is on Plaintiff to present "specific facts significantly probative to support an inference that Defendant's proffered justifications were a pretext for discrimination." *Rea,* 29 F.3d at 1455. In opposing summary judgment, a plaintiff

must be given an opportunity to show by competent evidence that the presumably valid reasons for the employment decision were really a pretext for a discriminatory decision. *Id*. In evaluating Plaintiffs' evidence, I must determine whether evidence interpreted in the light most favorable to her could persuade a reasonable jury that TriCore had discriminated against her.

*Comment Regarding How Long Plaintiff "Would Be Around"*

To meet her burden, Ms. Danville relies extensively upon a statement allegedly made at the April 29, 1999, search committee meeting. According to committee member Dr. Ronnie J. Garner, someone at the meeting "did refer to the fact that she [Plaintiff] might not be around very long anyway. But I do not remember who made that comment." (Exhibit 2, Garner Depo at pp. 8-9.) Plaintiff presents no other evidence about the making of this comment. Other members of the search committee present at that meeting, including Marcia Ash, Marcia Wooley, and Carol Tulenko, do not remember such a remark. Dr. Garner is the only person involved in the hiring process who remembers such a remark being made.

In the absence of other evidence from which discriminatory intent can reasonably be inferred, a single, "isolated or ambiguous" remark, even if made by a decision-maker[2], will be considered a "stray remark" which is insufficient to create a triable issue of fact. *Stone v. Autoliv*

---

[2] Although a search committee was involved in this employment decision, the Court is unable to determine the precise identities of the "decision makers". For example, according to the testimony of Dr. Garner, it is not clear that the decision to not interview Ms. Danville was a committee decision. (See Exhibit 2, Garner Depo. at p. 8: "Carol Tulenko and the people from human resources probably made the decision as to who would be the final four [candidates]." (*Id*. at p. 12). Contrast this with Ms. Tulenko's deposition testimony: "My memory is that that was at the end of the meeting, that we had identified four candidates that we were going to do telephone interviews with and the subject [of why Ms. Danville was not being considered for an interview] came up." Ex. F at p. 7. Further in her deposition, Ms. Tulenko testified that it was established at the April 29 meeting that Ms. Danville was not going to get a telephone interview. (*Id*. at p. 13).

*ASP, Inc.*, 210 F.3d 1132, 1140 (10th Cir. 2000), *cert. denied* (holding that comments that "at [plaintiff's] age, it would be difficult to train for another position" or "difficult to find a new job" were insufficient to create a triable issue on pretext). The *Stone* court noted that with more evidence, or a stronger showing of nexus, plaintiff's claim of pretext might well rise to the level of a jury question, but with these remarks standing alone the court's "decision is foreordained." *Id*. at 1140. *See also, Baucom v. Amtech Systems Corp.*, 131 F.3d 151, 117 WL 748668 *3 (10th Cir. 1997)(unpublished opinion)(single comment by plaintiff's supervisor, three months prior to decision to fire plaintiff, that plaintiff "was too old and set in his ways and that [plaintiff] would not be around much longer" held to be a stray remark, which was insufficient to create even an inference of discriminatory animus for purposes of avoiding summary judgment).

I must agree with TriCore that at most this is a "stray remark", that is, a "remark which is isolated (*i.e.*, not accompanied by other remarks similar in nature) or not accompanied by other evidence indicative of discriminatory animus." *Bumstead v. Jasper County*, 931 F. Supp. 1323,1334 (E.D.Tex. 1996). The alleged comment by an unidentified person at the search committee meeting clearly falls within this category, given its abstract nature and ambiguous meaning. It is ambiguous because it could also have been a comment as to how often Plaintiff had changed jobs in the past.

Furthermore, the fact that only Dr. Garner heard and/or remembered this comment indicates that the comment, if made, did not effect the employment decision. In order to rely on this statement, Plaintiff must show that it was made by a decision maker, *and* that there was a nexus between the discriminatory statements and the decision to terminate. *See McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1129 (10th Cir. 1998). As noted above in footnote one

7

herein, the record before the Court does not establish the identity of the true decision maker(s). Even assuming the comment was made, we do not know who made the comment, nor do we know if the speaker was a decision maker. All we know is that Dr. Garner heard and remembers the comment. Although Dr. Garner was not detrimentally influenced toward Plaintiff upon hearing the statement, he was *not* a decision maker as to this employment decision anyway. There is no evidence that any decision maker heard the comment. There are simply no facts on which to base the necessary nexus between this employment decision and the comment. In other words, Plaintiff has not established, via this comment, that "age actually played a role in the defendant's decisionmaking process and had a determinative influence on the outcome." *Rea,* 29 F.3d at 1455(*citing Hazen Paper Co.*, 507 U.S. at 610).

Not only is this comment not direct evidence of discrimination, it is simply too abstract to support even an inference of discrimination. In *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994), the Tenth Circuit stated that "[a]ge-related comments referring directly to the worker may support an inference of age discrimination. . . ." Not all remarks support even an inference of discrimination, however. Certain comments may be so isolated or ambiguous that they are "too abstract . . . to support a finding of age discrimination." *Id*. (*citation omitted*). I have already concluded that this remark is ambiguous and abstract. For the same reasons that I rejected Plaintiff's arguments that this comment supports a showing of direct evidence of discriminatory intent, I also find that it does not support a showing of pretext. *See Baucom v. Amtech Systems, Corp*., 131 F.3d at *3 n.2.

*Staff Complaints/Management Style/Lack of Team Building Skills*

While Plaintiff does not dispute that complaints about her may have been made, she argues that these complaints were not a major motivating factor in denying her the blood bank manager position. In making this argument, Plaintiff presents evidence that her prior supervisors were unaware of any warnings issued to her about having an abrasive and authoritarian management style. Plaintiff notes that this topic was not mentioned on the candidate rating chart prepared by Ms. Tulenko before the April 29 meeting. Plaintiff argues that this was not a "documented concern" until after this lawsuit was filed.

The fact that these concerns were not documented, in writing, is not sufficient proof by Plaintiff to raise an issue of fact on this issue. Plaintiff has interjected no doubt to discredit Defendant's position that these complaints were a genuine concern to the hiring committee. Ms. Danville concedes, and it appears undisputed, that this factor was discussed as a concern at the April 29 meeting and that it was a topic at separate meetings attended by Ms. Woolley, Ms Ash and Ms. Tulenko. (Def. Ex. C, Garner Depo. at pp. 9-11, 33-34; Def. Ex. D, Ash Depo. at pp. 11-12, 15-16). Dr. Garner, one of her supervisors, admits that he did not express at the April 29 meeting his opinion that these complaints were unimportant. (Def. Ex. C, Garner Depo. at p. 37). According to Ms. Ash's deposition, the "major concern expressed about Ms. Danville was the management style that had been observed firsthand by several members of the committee. (*Id.*, Exhibit D at p. 15). "My sense from the meeting was that most of the people who were acquainted with Ms. Danville felt that she did not have the management style that TriCore was attempting to develop within the organization." (*Id.* at p. 16)

Plaintiff has presented nothing that suggests any implausibility or lack of credence as to this management factor being part of Defendant's rationale in this employment decision. As noted

9

in Defendant's reply brief, it is perfectly believable and reasonable for an employer to hire an outsider with no prior history of staff complaints.  I note that Plaintiff understands that an employer can lawfully deny an employee a position, based on erroneous perceptions of employee conduct, as long as perceptions are not discriminatory.  At most, Plaintiff has attempted to show error in perceptions of her management style.  Most importantly, nothing about this factor suggests that Defendant made the employment decision for other than its stated reasons.[3]  Plaintiff has shown no evidence on which a jury could find that Defendant's concern about her lack of appropriate management skills, reflected by staff complaints, was not a good faith concern.

### *Plaintiff's Lack of Prior Experience with Centralized or Multi-Site Blood Bank Operations*

Plaintiff's next argument for pretext hinges on an Employment Interview Assessment (Exhibit 14) prepared by Ms. Tulenko.  This form is dated May 21, 1999, and was marked as Exhibit 8 to Ms. Tulenko's deposition.  Ms. Tulenko filled out the form during her in-person interview of Ms. Richards.   On the form, Ms. Tulenko indicated that Ms. Richards did not have experience in centralized blood banking.  Plaintiff argues that, contrary to one of Defendant's reasons given for not interviewing her, experience in this area must not have in fact been important, given that Ms. Richards was hired for the position, despite this notation that Ms. Richards lacked this type of experience.

---

[3]  Plaintiff categorizes these complaints as hearsay, however these complaints are not hearsay, because they are not offered for the truth of the matter asserted in the complaint, but rather to establish that complaints were made.  F.R.Evid. 801(c).

10

Plaintiff argues that there is a contradiction between what Ms. Tulenko wrote on the May 21 form about the qualifications of Ms. Richards, and her later deposition testimony, and that such contradiction presents a question of credibility for the jury to decide.   A review of facts relating to the prior experience of Ms. Richards and Plaintiff, as known at the time this employment decision was made, is crucial.  Ms. Tulenko prepared a chart before the April 29 meeting, indicating about Ms. Richards: "Last 6 yr at Stanford/UCSF multisite system" (Ex. 3 to Ex. C). When asked at her deposition to explain her May 21 assessment of Ms. Richards, Ms. Tulenko testified that she did not know why she wrote down that Ms. Richards did not have centralized blood banking experience, and that she thought Ms. Richards had that experience despite the written assessment.  (Exhibit F, Tulenko Depo, p. 19).  Ms. Tulenko stated: "At the time of that search committee meeting, I believed that her experience with the centralized –  with the blood bank consolidations in the San Francisco area, that that was equivalent to centralized blood banking."  (*Id.*, p. 20).

Ms. Tulenko testified that the thing that separated Plaintiff from the other applicants was the factor dealing with recent experience in centralized blood banking.  (Ex. F, Tulenko Depo, p. 16).  She stated: "The candidates that were selected for telephone interview had current, or very recent experience of that nature [with a centralized blood bank service], and that's why they were selected, on that basis." (*Id.*, p. 14).  When asked by defense counsel at her deposition what she meant by her comment on the May 21 form, Ms. Tulenko stated that "the multi-site, or the consolidation that they were doing in San Francisco with Stanford ... was not the same as a centralized blood bank  . . . .".  (*Id.*, p. 42).  Defense counsel then asked her whether it was centralized or multi-site experience that was important.  Ms. Tulenko answered that "[c]entralized

11

was the first preference, then large multi-site complexity would have been second." (*Id*.).  On this same form, Ms. Tulenko rated Ms. Richards as "exceptional" in the experience category.  She explained that this was because the "complexity of the Stanford site and the other areas that she was involved in were very impressive."(*Id*. at p. 43).

Because Ms. Tulenko and Plaintiff had both worked at Presbyterian Hospital, Ms. Tulenko was aware of Plaintiff's positions held and experience.  (*Id*., p. 17).   She did not consider Plaintiff to have recent experience in centralized blood banking.  (*Id*).  The decision to not interview Plaintiff was based on the consensus of the search committee that four other candidates were the strongest candidates for the position.  (Def's Ans. to Interrog. No. 7).

I have carefully reviewed the proof before the Court as it relates to the last of TriCore's proffered reasons for its decision not to interview Plaintiff.  I have considered Ms. Tulenko's handwritten comment on the Employment Interview Assessment and have read her answers to questions posed to her at her deposition about this asserted contradiction as to what criteria were used in this employment decision.  I conclude that in fact there is no contradiction between what Ms. Tulenko wrote on this assessment form and what she later testified.  She explained the difference between the most preferred centralized blood banking experience, and the next preferred multi-site type of experience.  On the form, she rated Ms. Richards as "exceptional" in the experience category.  I find no weakness, implausibility, inconsistency, or any indicia that her reasoning is unworthy of credence.  Viewing this proof in the light most favorable to Plaintiff, I am unable to conclude that this stated reason for the employment decision was really a pretext for a discriminatory decision or that this presents a triable issue for a jury.

**Conclusion**

Ms. Danville has not shown that at the time this employment decision was made there was any dispute or genuine issue concerning the sincerity of TriCore's proffered reasons for the decision. Although summary judgment is not ordinarily appropriate for settling issues of intent or motivation, *Setliff v. Memorial Hosp. of Sheridan County,* 850 F.2d 1384, n.12 (10th Cir. 1988), all of Plaintiff's evidence together is insufficient to raise doubts about TriCore's motivation. The test is good faith belief. *Reynolds*, 69 F.3d at1535. Based upon the foregoing, the Court finds no triable issue of fact regarding Tricore's stated reason for this employment decision.

**WHEREFORE**, for the reasons stated herein, Defendant's Motion for Summary Judgment (Docket No. 16) shall be **granted** and this case shall be **dismissed.**

**IT IS SO ORDERED.**

_____
**UNITED STATES DISTRICT JUDGE**